UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELI'EZER RE'UEL BEN-BINYAMIN, | Case No. 2:18-cv-01015-KJM-JDP (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED AND PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT BE DENIED |
| v. | |
| C. RAMIREZ, *et al.*, | |
| Defendants. | OBJECTIONS DUE IN 14 DAYS |
| | ECF Nos. 64 & 73 |

Plaintiff, a state prisoner without counsel, alleges that defendants violated his First Amendment right to practice his religion freely. Defendants have filed a motion for summary judgment, ECF No. 64, and plaintiff has filed a cross motion for summary judgment, ECF No. 73. I recommend that defendants' motion be granted and plaintiff's denied.

1

I.      **Legal Standards**

   A.      **Summary Judgment Standard**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  An issue of fact is genuine only if there is sufficient evidence for a reasonable factfinder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Each party's position must be supported by (1) citations to particular portions of materials in the record, including but not limited to portions of depositions, documents, declarations, or discovery; or (2) argument showing that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The court may consider material in the record beyond that cited by the parties, but it is not required to do so.  *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).  Given the liberal standard afforded pro se litigants and the prohibition against granting summary judgment by default, I will take the whole record into consideration in evaluating whether defendants are entitled to summary judgement.

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party meets this initial burden, the burden shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d

1  376, 387 (citing *Celotex Corp.*, 477 U.S. at 323).  While the non-moving party is not required to
2  establish a material issue of fact conclusively in its favor, it must at least produce "evidence from
3  which a jury could reasonably render a verdict in [its] favor."  *Id.* (citing *Anderson*, 477 U.S. at
4  252).  The evidence must be viewed "in the light most favorable to the nonmoving party" and "all
5  justifiable inferences" must be drawn in favor of the non-moving party.  *Orr v. Bank of America,*
6  *NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002).

       **B.**     **Free Exercise Claims**

8         To succeed on a First Amendment religious practice claim, a claimant "must show that the
9  government action in question substantially burdens the person's practice of her religion."  *Jones*
10 *v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).  The Ninth Circuit has held that a "'substantial
11 burden' is imposed only when individuals are forced to choose between following the tenets of
12 their religion and receiving a governmental benefit . . . or coerced to act contrary to their religious
13 beliefs by the threat of civil or criminal sanctions . . . ."  *Navajo Nation v. U.S. Forest Serv.*, 535
14 F.3d 1058, 1070 (9th Cir. 2008).  A substantial burden is "more than an inconvenience on
15 religious exercise; it must have a tendency to coerce individuals into acting contrary to their
16 religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate
17 his beliefs."  *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013).  The subjective diminishment
18 of spiritual fulfillment, standing alone, does not give rise to a substantial burden.  *Navajo Nation*,
19 535 F.3d at 1070.

20        Prisoners do not abandon their free exercise rights upon conviction.  *See McElyea v.*
21 *Babbitt,* 833 F.2d 196, 197 (9th Cir. 1987) ("The right to exercise religious practices and beliefs
22 does not terminate at the prison door.").  Those rights, however, are constrained.  Even a
23 substantial burden on an inmate's religion is permitted by a prison regulation that "is reasonably
24 related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987).

25     **II.**     **Background**

26        At issue are two incidents—the first occurring on August 29, 2016, and the second on
27 September 11, 2017—during which defendants told plaintiff to tuck in his tallit katan or Tzitzit,
28 an item that has been described as "an undergarment bearing fringes . . . worn by some of the"

3

1  Jewish faith to fulfill the commandment appearing in the Bible at the book of Numbers, ch. 15,
2  verse 37." *See Boles v. Neet*, 486 F.3d 1177, 1179 n.2 (10th Cir. 2007).[1]  On both occasions,
3  defendants told plaintiff to tuck his Tzitzit into his pants before entering the cafeteria.  Plaintiff
4  refused and elected to return to his cell, contending that tucking in the garment would "defame his
5  God."  ECF No. 1 at 14.

### III.     Analysis

Defendants raise three arguments.  First, they argue that ordering plaintiff to tuck in his Tzitzit did not amount to a substantial burden on his religious practice.  Second, they argue that, even if plaintiff's practice was substantially burdened, requiring plaintiff to tuck in his garment was reasonably related to a legitimate penological interest.  Finally, they argue that they are entitled to qualified immunity.  I agree with defendants' second argument and recommend granting their motion for summary judgment on that basis.

Defendants' first argument—that requiring plaintiff to tuck in his garment did not amount to a substantial burden—is not without appeal.  They present evidence that plaintiff has enjoyed various accommodations permitting him to practice his religion as a Messianic Jew.  In his deposition, plaintiff attested that he attends Jewish religious services, receives Kosher meals, and is permitted to possess various religious items including: a prayer shawl, yarmulka, a prayer box, unspecified religious books and his Tzitzit.  ECF No. 64-6 at 22-23, 28, 31 (Plaintiff's Deposition).  Defendants emphasize that plaintiff was never required remove his garment to enter the cafeteria, only to tuck it in.  And Orel David, an ordained Rabbi who provides Jewish services at the prison, opines that there is "no requirement in Jewish tradition that the tallit katan/tsitsit be worn either inside or outside of one's clothing . . . [i]t is perfectly acceptable to wear [the garment] tucked into one's pants."  ECF No. 64-5 at 3 ¶ 12.  Moreover, Rabbi David attests that Jewish organizations consider Messianic Judaism, a religion that combines Christianity with elements of the Jewish tradition, to be a form of Christianity; he indicates that it does not impose

---

[1] The August 29, 2016 incident is alleged to have involved defendant Akemon, and the September 11, 2017 incident is alleged to have involved defendants Ramirez and Hanley.  ECF No. 60.  This case initially involved more claims, but defendants previously obtained partial summary judgment based on plaintiff's failure to exhaust administrative remedies.  *Id.*

4

1 on its followers any obligation to follow Old Testament laws. *Id.* at 4 ¶¶ 20-22.

2 The Ninth Circuit has held, however, that the pertinent question is not whether the practice conforms to the central tenets of a religion, but whether plaintiff sincerely believes in its religious necessity. *See Shakur v. Schriro*, 514 F.3d 878, 885 (9th Cir. 2008). Here there is a genuine dispute of fact as to whether plaintiff's belief that his Tzitzit remain untucked is sincerely held insofar as his complaint alleges that tucking it in would defame his God. ECF No. 1 at 14. Thus, I turn to the question of whether requiring plaintiff to tuck in the garment was related to a legitimate penological interest.

Under *Turner*, I must consider four factors in determining whether a legitimate penological interest exists: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest that justifies it; (2) whether prisoners have an alternative method of exercising their religion; (3) the impact accommodating the asserted constitutional right would have on prison staff and other inmates; and (4) the absence of ready alternatives to the challenged regulation. 482 U.S. at 89-90.

As to the first factor, defendants argue that the dress code policy is meant to ensure the safety of prison staff and other inmates. It cannot be disputed that ensuring prison safety and security are legitimate state interests. *Preiser v. Rodriguez*, 411 U.S. 475, 491-92 (1973) ("It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons."). Defendants argue that requiring shirts and garments be tucked into inmates' pants makes it more difficult for them to smuggle contraband, like weapons, into the cafeteria by way of their waistlines. ECF No, 64-7 at 2-3 ¶ 10 (Declaration of J. Hanley). I find that the first factor has been met.

As to the second factor, the Ninth Circuit has held that "[t]he relevant inquiry under this factor is not whether the inmate has an alternative means of engaging in the particular religious practice that he or she claims is being affected; rather, we are to determine whether the inmates have been denied all means of religious expression." *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993). As described above, plaintiff had various religious accommodations that enabled him to

5

practice his religion as Messianic Jew. He had a kosher diet, the ability to attend religious services and, perhaps most importantly, leave to wear his Tzitzit untucked in areas other than the cafeteria. Thus, I cannot find that he was denied all means of religious expression by defendants.

The third factor also weighs in defendants' favor. As noted in my discussion of the first factor, requiring inmates to tuck their garments into their pants protects other inmates and staff by making the smuggling of weapons and other contraband more difficult. It goes without saying that the presence of unauthorized weapons and other contraband would render an area less safe. "Where, as here, the right in question can be exercised only at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike, the courts should defer to the informed discretion of corrections officials." *Thornburgh v. Abbott*, 490 U.S. 401, 418 (1989) (internal quotations and citations omitted).

Fourth and finally, plaintiff has not shown that there were "obvious, easy alternatives" to the regulation requiring inmates to tuck their garments into their pants.[2] *Turner*, 482 U.S. at 90-91. He does argue that defendants' *Turner* arguments are undermined by the fact that sweaters and headbands for Native American inmates, both of which also might enable contraband smuggling, are permitted in the cafeteria. ECF No. 71 at 2. As defendants point out, however, the fact that contraband may be smuggled in myriad ways does not establish that prison officials have no legitimate penological interest in addressing one particular area of concern.

Based on the foregoing, I find that the cafeteria dress code that defendants enforced was reasonably related to legitimate penological interests and they should be granted summary judgment on that basis.

Accordingly, it is RECOMMENDED that:

1. Defendants' motion for summary judgment, ECF No. 64, be GRANTED and summary judgment be entered in their favor.

2. Plaintiff's motion for summary judgment, ECF No. 73, be DENIED.

---

[2] The burden as to the fourth factor falls to the plaintiff. *Overton v. Bazzetta*, 539 U.S. 126, 136 (2003) ("Turner does not impose a least-restrictive-alternative test, but asks instead whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal.").

    3.  Judgment be entered in defendants' favor and against plaintiff.

    4.  The Clerk of Court be directed to close the case.

I submit these findings and recommendations to the district judge under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days of the service of the findings and recommendations, any party may file written objections to the findings and recommendations with the court and serve a copy on all parties.  That document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time may result in the waiver of rights on appeal.  *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   July 25, 2022

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE